```
 1                  UNITED STATES DISTRICT COURT
 2                 CENTRAL DISTRICT OF CALIFORNIA
 3                     _____
 4
 5   HEN & THREAD, INC., a           )
     California corporation, and     )
 6   HYUN KIM, an individual,        )
                                     )
 7             Plaintiffs,           )
                                     )
 8        vs.                        )  Case No.
                                     )  2:19-cv-00283-CBM-AFM
 9   WHOLESALEFASHIONSQUARE.COM,     )
     INC., a California corporation,)
10                                   )
               Defendant.            )
11                                   )
     WHOLESALEFASHIONSQUARE.COM,     )
12   INC., a California corporation,)
                                     )
13             Cross-Plaintiff       )
                                     )
14        vs.                        )
     _____)
15     (CONTINUED ON PAGE 2)
16
17
18         VIDEOCONFERENCE DEPOSITION OF PMK FOR
19                  J & K CLOTHING, INC.,
20                    ANDREW JIN PARK
21                Friday, August 7, 2020
22                Los Angeles, California
23
24
25   Reported by:  Susan R. Wood, CSR No. 6829
```

Page 1

```
 1
 2
      BRIAN J. PARK, an individual,    )
 3    ANDREW J. PARK, an individual,   )
      J & K CLOTHING, INC. d/b/a       )
 4    LOVE LETTER COLLECTION a.k.a.    )
      MI AMORE F/S, a California       )
 5    Corporation; YOUNG H. CHO, an    )
      individual, SOYEON CHO, an       )
 6    individual, SKYOCEAN, INC., a    )
      California Corporation; and      )
 7    DOES 1-10, individuals and/or    )
      entities of unknown form,        )
 8                                     )
                  Cross-Defendants.    )
 9    _____  )
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 2

```
 1                         APPEARANCES
 2
 3
 4   For Plaintiffs:         Fox Rothschild, LLP
     (Via Videoconference)   By MR. MITCHELL S. KIM
 5                              MR. JOSEPH A. UNGARO, II
                             Attorneys at Law
 6                           10250 Constellation Boulevard
                             Suite 900
 7                           Los Angeles, California  90067
                             mkim@foxrothschild.com
 8                           jungaro@foxrothschild.com
 9
10
     For Defendant           The Wagner Firm
11   Wholesalefashion        By MR. AVI WAGNER
     square.com, Inc.:          MS. CHARISSA MORNINGSTAR
12   (Via Videoconference)   Attorneys at Law
                             1925 Century Park East
13                           Suite 2100
                             Los Angeles, California  90067
14                           (310) 491-7949
                             avi@thewagnerfirm.com
15                           charissa.morningstar@gmail.com
16
17
     For Cross-Defendants    Atkinson, Andelson, Loya,
18   J & K Clothing, Inc.,   Ruud & Romo
     Brian Park, Andrew      By MR. DAVID KANG
19   Park:                   Attorney at Law
     (Via Videoconference)   12800 Center Court Drive
20                           Suite 300
                             Cerritos, California  90703
21                           david.kang@aalrr.com
22
23
24
25

                                                         Page 3
```

```
 1                    APPEARANCES (Continued)
 2
 3
 4    For Cross-Defendants    Law Offices of S. Calvin Myung
      Skyocean, Inc.,         By MR. S. CALVIN MYUNG
 5    Young H. Cho and        Attorney at Law
      Soyeon Cho:             3700 Wilshire Boulevard
 6    (Via Videoconference)   Suite 500
                              Los Angeles, California  90010
 7                            (213) 382-3600
                              scalvinmyunglaw@gmail.com
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
                                                        Page 4
```

```
 1                    I  N  D  E  X

 2

 3    EXAMINATION BY                                      PAGE

 4

 5    MR. WAGNER                                             8

 6

 7    MR. KANG                                             148

 8

 9    MR. MYUNG                                            156

10

11    MR. KIM                                              160

12

13    MR. KANG (Further)                                   173

14

15                      EXHIBIT INDEX

16    Exhibit 1 - Text message, Bates stamp SKYOCEAN#43     82

17    Exhibit 2 - E-mail chain and attachment, Bates

18                stamp J&K000284 through J&K000285         88

19    Exhibit 3 - E-mail chain with attached invoice,

20                Bates stamp J&K000266 through J&K000267   91

21    Exhibit 4 - Photographs with attachments, Bates

22                stamp J&K000202 through J&K000235         98

23    Exhibit 5 - Text message, Bates stamp J&K000081      115

24    Exhibit 6 - E-mail chain, Bates stamp J&K000244

25                through J&K000246                        117
```

```
 1                EXHIBIT INDEX (Continued)

 2                                                        PAGE

 3    Exhibit 7 - Document entitled "Cross-Defendants'

 4                Privilege Log June 30, 2020"            125

 5    Exhibit 8 - Document entitled "Confidential

 6                Settlement Agreement and General

 7                Release," Bates stamp J&K000236

 8                through J&K000243                       126

 9    Exhibit 9 - Business card, Bates stamp J&K000287

10                through J&K000288                       129

11    Exhibit 10 - Letter dated 9/5/18, Bates stamp

12                 J&K000178                              136

13    Exhibit 11 - Invoice, Bates stamp J&K000004         137

14    Exhibit 12 - Text message, Bates stamp J&K000049    139

15    Exhibit 13 - Check Number 9495                      153

16

17

18

19

20

21

22

23

24

25
```

```
 1        A.   I was the middleman.  I was relaying the
 2   messages back and forth, kind of playing the
 3   interpreter.
 4        Q.   But Sketch never communicated directly with
 5   Eli, to your knowledge; correct?
 6        A.   Not to my knowledge.
 7        Q.   And Sketch never communicated directly with
 8   Wholesale Fashion Square, to your knowledge; correct?
 9        A.   Not to my knowledge.
10        Q.   So the instructions that were given were given
11   by you.
12             MR. MYUNG:  Objection.  Vague and ambiguous.
13             THE WITNESS:  Again, I'd have to dig through my
14   messages, but Eli at WFS and I were working closely to
15   kind of coordinate the timing and trucking and all the
16   little nuances involved with the actual logistics.
17   BY MR. WAGNER:
18        Q.   And so when the merchandise was returned, it
19   was physically returned to Skyocean; correct?
20        A.   Yes, I believe so.
21        Q.   And what happened to it from there?
22        A.   I don't know.  I mean, by then I was just, you
23   know, done with both sides.  I didn't want any part of
24   it.  Once -- I think that's when Sketch was trying to
25   finalize the numbers.  That's when we realized we were
```

Page 48

```
 1   those goods?
 2            MR. KANG:  Objection.  Lacks foundation.
 3   Assumes facts.
 4            THE WITNESS:  Yeah, I don't know.  I thought
 5   you had asked that question; so I'm not sure.  I don't
 6   know.
 7   BY MR. WAGNER:
 8      Q.   And at the time you sold the goods to Wholesale
 9   Fashion Square, they were in the possession of Skyocean;
10   correct?
11            MR. KANG:  Again, same objection.
12            THE WITNESS:  That's where we met but, again, I
13   don't know -- as far as title and things like that, I
14   don't know.
15   BY MR. WAGNER:
16      Q.   Well, I understand title you don't know.  My
17   next question was about possession.  At the time you
18   sold the goods to Wholesale Fashion Square, they were in
19   the possession of Skyocean; correct?
20            MR. MYUNG:  Objection.  Vague and ambiguous as
21   to the term "possession."
22            THE WITNESS:  I had believed that to be
23   Sketch's merchandise, and plus Skyocean is where we
24   physically met, yes.
25   ////
```

Page 78

```
 1    office.
 2        Q.   Was there anything specifically you recall -- I
 3    understand you're going to abide by your attorney's
 4    instruction not to answer about the contents of the
 5    meeting with Mr. Myung, yourself, and the owner of
 6    Skyocean.  And I understand that instruction, whether or
 7    not I agree with it.  My point is is apart from
 8    discussions in front of Mr. Myung, do you recall
 9    anything about discussions with the owner of Skyocean
10    outside the presence of Mr. Myung?
11        A.   No.  I mean, it was just like small talk on our
12    way back to our cars.  That's it.
13             (Exhibit Number 2
14             marked for identification.)
15    BY MR. WAGNER:
16        Q.   If you could turn to Exhibit 2.
17        A.   Okay.  Looks like an e-mail.
18        Q.   And this is an e-mail chain and attachment
19    between yourself and Wholesale Fashion Square; correct?
20        A.   Correct.
21        Q.   And if you turn to page -- second page of the
22    document, which has at the bottom J&K000285, you see the
23    first e-mail in time is a September 13th e-mail from
24    Grace at Wholesale Fashion Square to yourself.
25        A.   I'm sorry.  I'm just trying to get this in
```

Page 88

```
 1   focus here.  Can you repeat that question.
 2        Q.   Sure.
 3             Turn to the second page of the document.
 4        A.   Okay.
 5        Q.   And you see -- the bottom of the second page,
 6   do you see where it says J&K000285?  Do you see that all
 7   the way at the bottom?
 8        A.   00285?  Oh, yes.
 9        Q.   There's an enlarging tool, you know, you can --
10        A.   No, no, no.  I'm sorry.
11        Q.   If it's pretty small you can zoom in.
12        A.   I see it.  I was looking at the actual
13   documentation, not the notation below.  Yes, I see that.
14        Q.   So you see on the notation -- okay.
15             And you see above that there is an e-mail from
16   September 13, 2018, from Grace at Wholesale Fashion
17   Square to yourself?
18        A.   Yes.
19        Q.   And this reflects the refund request that you
20   received from Wholesale Fashion Square; correct?
21             MR. KANG:  I'm going to object to the extent
22   that the document speaks for itself.
23             THE WITNESS:  Okay.  This is in reference to
24   the refund, yes.
25   ////
```

Page 89

1   BY MR. WAGNER:
2      Q.   And this is the request you received from
3   Wholesale Fashion Square for a refund; right?
4      A.   It looks like it.
5      Q.   And the statement that Wholesale Fashion Square
6   paid a total amount of $133,990.50, was that an accurate
7   statement?
8      A.   I'd have to -- again, to give you precise
9   numbers, I'd have to look at my -- my records.
10     Q.   So you're not sure one way or the other?
11     A.   I'm not sure if that's the exact number.  I
12  assume it's correct, yes.
13     Q.   And then in response you processed a refund to
14  them; correct?
15     A.   Yes, I did.
16     Q.   And the wire -- and that was for $100,000; is
17  that correct?
18     A.   Again, I'd have to look.  I can't recall the
19  specifics, but I did wire them a good chunk for sure.
20     Q.   If you look further up that page, you see at
21  the top of Page 285 there's an image of a wire transfer
22  page.  At the top of that second page, do you see that
23  picture?  It looks like a wire transfer request?
24     A.   Uh-huh.
25     Q.   And you see -- I realize the document's not

1  oriented normally, but you see what would be the top
2  right corner of the document if it were oriented
3  normally in the closest part to the top where it says
4  $100,000?
5      A.   Yes.  So that must be the amount we sent back,
6  yes.
7      Q.   And so this is stated in your e-mail.  On the
8  first page this reflects your refund to Wholesale
9  Fashion Square in the amount of $100,000; is that
10 correct?
11     A.   I don't see that e-mail.
12     Q.   If you go to the first page, there's an e-mail
13 from September 14th, 2018, from yourself to Grace and
14 Michael at Wholesale Fashion Square.  It says "Hi there,
15 please look out for the wire.  Stamped confirmation
16 below."
17     A.   Yeah.
18     Q.   And so this $100,000 reflects your refund to
19 Wholesale Fashion Square; is that correct?
20     A.   Yes, that's correct.
21          (Exhibit Number 3
22          marked for identification.)
23 BY MR. WAGNER:
24     Q.   If you could turn to Exhibit 3.
25     A.   Okay.

1   Q.   It's a yes or no.  I didn't ask about the
2   purpose.  I asked whether that was an accurate
3   statement.
4   A.   As far as it being accurate, I mean, he's
5   taking ownership from Sketch.  I'm just strictly
6   facilitating the deal.
7   Q.   But that's not --
8   A.   Well, again, I -- to answer your question, it's
9   probably incorrect because, again, I'm not a lawyer and
10  I probably -- looking at it now, it's probably not
11  phrased the way it should be 'cause I was never the
12  owner of the goods.
13  Q.   So the factual premise of this contract is
14  inaccurate; is that correct?
15  A.   I'm sorry?
16  Q.   The factual premise of this contract is
17  inaccurate; is that correct?
18  A.   Yeah.  I don't know what that means.
19       MR. KANG:  Speculation.  Calls for a legal
20  conclusion.
21  BY MR. WAGNER:
22  Q.   Do you know what factual premise is?  Is that a
23  phrase you understand?
24       MR. KANG:  Calls for a legal conclusion.
25       THE WITNESS:  Factual premises.  Is it the

Page 103

1   the deal, after?  Was it --
2        A.   I mean, it looks like -- this looks like the
3   preliminary numbers.  Post, obviously, we are shorted
4   significantly more than that.
5        Q.   And then it has, you know, kind of -- it's
6   Column B and you've got B8 and B9 and that's C8 and C9.
7   Is that permutations kind of calculation based on
8   different prices what the gross cost would be?
9        A.   Yes.  I mean, that's the agreed price that WFS
10  agreed to purchase versus agreed price that Sketch had
11  agreed to give, and then as you can see right below that
12  is the net commission baked in for myself.
13       Q.   And so that net -- just to be clear, that net,
14  B12 and B13 -- excuse me, B12 and C12, that refers to
15  the commission to you?
16       A.   I believe so.  I mean, if I can -- do you want
17  me to use a calculator and check?  I believe so.
18       Q.   Well, I'm not asking whether the math is right,
19  but I'm saying it's your understanding that figure
20  refers to commissions to you.
21       A.   Yeah.
22       Q.   Is that correct?
23       A.   I believe so, yes.
24       Q.   And then when you go down below that to Sonata
25  amount 114,849, did that reflect Sonata was to be paid

Page 107

```
 1   STATE OF CALIFORNIA )
                         ) ss.
 2   COUNTY OF KERN      )

 3

 4          I, ANDREW JIN PARK, do hereby certify:
 5          That I have read the foregoing
 6   deposition;
 7          That I have made such changes in form and/or
 8   substance to the within deposition as might be necessary
 9   to render the same true and correct;
10          That having made such changes thereon, I hereby
11   subscribe my name to the deposition.
12          I declare, under penalty of perjury, that the
13   foregoing is true and correct.
14          Executed this _____ day of _____, 2020,
15   at _____, California.
16
17
18          _____
                    ANDREW JIN PARK
19
20
21
22
23
24
25
```

Page 176

```
1    STATE OF CALIFORNIA  )
                          ) ss.
2    COUNTY OF KERN       )

3

4

5         I, Susan R. Wood, a Certified Shorthand
6    Reporter in the State of California, holding Certificate
7    No. 6829, do hereby certify that ANDREW JIN PARK, the
8    witness named in the foregoing deposition, was by me
9    duly sworn; that said deposition was taken Friday,
10   August 7, 2020, at the time and place set forth on the
11   first page hereof.
12        That upon the taking of the deposition, the
13   words of the witness were written down by me in
14   stenotypy and thereafter transcribed by computer under
15   my supervision; that the foregoing is a true and correct
16   transcript of the testimony given by the witness.
17        I further certify that I am neither counsel for
18   nor in any way related to any party to said action, nor
19   in any way interested in the result or outcome thereof.
20        Dated this 17th day of August, 2020, at
21   Bakersfield, California.
22
23
24
          Susan R. Wood, CSR No. 6829
25
```

Page 177